# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CORECLARITY, INC., | § | |
| | § | |
| | § | Civil Action No.  4:20-CV-601 |
| *Plaintiff,* | § | Judge Mazzant |
| v. | § | |
| | § | |
| GALLUP, INC. | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff CoreClarity, Inc.'s ("CoreClarity") Application for Temporary Restraining Order (Dkt. #6).  After considering the complaint, the application, arguments of counsel, and supplemental briefing, the Court finds that the temporary restraining order should be **DENIED**.

## BACKGROUND

This dispute centers around Gallup's planned use of intellectual property allegedly resembling that of CoreClarity's.  In the early 2000s, Gallup developed and introduced the CliftonStrengths Assessment system ("CliftonStrengths"), an evaluation tool that focuses on and correlates thirty-four different talent themes ("Themes") that make up an individual's potential strengths.  Using CliftonStrengths, Gallup serves its clients by identifying individuals' strengths and presenting corresponding strategies to arrange optimal workplace dynamics.  Gallup organizes the CliftonStrengths Themes into four categories it calls the "Four Domains of Leadership Strengths" ("Domains").  The Domains were originally depicted with a colorless, T-chart-style infographic.

Since 2004, CoreClarity has worked with individuals, teams, and organizations—based on synthetization of and instruction on permutations of CliftonStrengths results—to maximize the work efficiency and productivity of its clients.  In this respect, CoreClarity and Gallup offer similar services.[1]  The infographic representing the foundation of CoreClarity's service, the CoreClarity Key ("Key"), utilizes a grid system with a specific design, orientation, and color scheme.  The Key consists of a two-by-two quadrant design contained within a circle and adorned by a purple, orange, green, and blue color scheme in a clockwise sequence.  CoreClarity has used this icon since the company's founding.



In 2012, Gallup began associating the colors purple, yellow, blue, and red with its CliftonStrengths mark, each color representing a different Domain.  Gallup subsequently altered its CliftonStrengths icon in October 2018, changing the shape of the mark to four quarter-circle arcs arranged to form a full circle.  At that time, the four quarter-circle arcs were purple, yellow,

---

[1] In its use of CliftonStrengths, CoreClarity provides attribution to Gallup in its graphics, presentations, acknowledgement forms, and publications.

blue, and red, respectively.  A little more than a year later, Gallup announced another change to its CliftonStrengths mark—which is the subject of this litigation.

With the stated purpose of ensuring compliance with the Americans with Disabilities Act, Gallup expressed its intention in a December 2019 newsletter to change the color scheme of the CliftonStrengths mark.  Gallup planned to change the color scheme from purple, yellow, blue, and red to blue, green, orange, and purple, prompting concerns from CoreClarity that Gallup's revised mark would appear confusingly similar to the Key.



Following Gallup's announcement regarding these proposed changes, CoreClarity, Gallup, and their respective counsels engaged in communications regarding the potential dispute.  After discussions in the ensuing months failed to produce a mutually agreeable outcome, CoreClarity filed its Original Complaint and Request for Temporary Restraining Order, Preliminary and Permanent Injunction on August 6, 2020 (Dkt. #1) and its Application for Temporary Restraining Order the following day (Dkt. #6).  Gallup filed its Response in Opposition to CoreClarity's Application for Temporary Restraining Order on August 14, 2020 (Dkt. #12) and its Sur-Reply in Opposition to the Temporary Restraining Order Application on August 17, 2020 (Dkt. #18).  The Court subsequently held a hearing on the Application for Temporary Restraining Order with both parties appearing on August 17, 2020.  In the days following the hearing, the parties submitted supplemental briefing to the Court.  (Dkt. #20–21).

## LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d). Temporary restraining orders are "an extraordinary and drastic remedy, not to be granted routinely." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The decision to grant or deny a temporary restraining order "rests within the equitable discretion of the district courts," and "such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

A plaintiff seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). A temporary restraining order should be granted "only if the plaintiff clearly carries the burden of persuasion as to *all four factors*." *Crump v. Gilmer Indep. Sch. Dist.*, 797 F. Supp. 552, 553 (E.D. Tex. 1992) (emphasis added) (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

## ANALYSIS

CoreClarity seeks a temporary restraining order to prevent Gallup from infringing on CoreClarity's intellectual property. The Court finds that CoreClarity has not established the necessary elements for a temporary restraining order on its claims.[2]

---

[2] The Court's analysis of CoreClarity's trademark infringement claim controls that of Plaintiff's unfair competition claim because of the substantive overlap between the causes of action. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("The analysis with respect to [Plaintiff's] claims under the Lanham Act will be dispositive of its corresponding . . . 'unfair competition action under Texas common law [because they]

### I.      Likelihood of Success on the Merits

Based on the record currently before the Court, CoreClarity is not likely to succeed on the merits of its trademark infringement or unfair competition claims.  To establish this factor, Plaintiff "needs only to present a *prima facie* case" of infringement, not that it will ultimately prevail on the claim.  *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011). CoreClarity can satisfy this requirement by "rais[ing] questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."  *Tampa Phosphate R.R. Co. v. Seaboard Coast Line R.R. Co.*, 418 F.2d 387, 392 (5th Cir. 1969) (internal quotation marks omitted) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

"[A]ny word, name, symbol, or device, or any combination thereof" constitutes a trademark if it is used or intended to be used "to identify and distinguish" a person's services "from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127.[3]  While registering a mark is "significant" and "confers important legal rights and benefits on trademark owners who register their marks," *In re Tam*, 808 F.3d 1321, 1329 (Fed. Cir. 2015) (en banc) (quoting *B & B Hardware, Inc. v. Hargis Ind., Inc.*, 575 U.S. 138, 142 (2015)), *aff'd sub nom. Matal v. Tam*, 137 S. Ct. 1744 (2017), the Lanham Act protects both registered and

---

present[] essentially no difference in issues . . . .'" (internal quotation marks omitted) (quoting *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied))).

[3] Since CoreClarity advertises and presents the Key to its clients as part of its service, CoreClarity's claim is more accurately characterized as a service mark infringement.  *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1356 (Fed. Cir. 2009) ("[S]ervice marks apply to intangible services, [while] trademarks are used to distinguish tangible goods.").  Because the statutory definitions of trademarks and service marks "closely track each other" and caselaw "construing the two terms inform[s] [the] analysis equally," *Amazing Spaces*, 608 F.3d at 236 n.10, the Court refers to the claim as "trademark infringement." *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 cmt. f (AM. L. INST. 1995) ("The substantive rules applicable to both [trademarks and service marks] are fundamentally identical, . . . and the term 'trademark' is generally understood to include marks used in the marketing of either goods or services.").

unregistered marks.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8 (5th Cir. 2010).  Here, the relevant dispute between CoreClarity and Gallup concerns the Key—an unregistered mark.

To succeed on a trademark infringement claim under Section 43(a) of the Lanham Act, CoreClarity must demonstrate "(1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark."[4] *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018); *see* 15 U.S.C. § 1125(a)(1)(A) ("Any person who . . . uses in commerce any word, term, name, symbol, or device, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.").

CoreClarity has not yet made a prima facie showing that it will succeed in demonstrating a likelihood of confusion between the Key and Gallup's Domains mark.[5]  "Likelihood of confusion is synonymous with a probability of confusion, which is *more than a mere possibility* of confusion."  *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (emphasis added).  Courts in the Fifth Circuit look to the "digits of confusion" to determine whether the use of a mark creates a likelihood of confusion as to affiliation, sponsorship, or source.  *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484–85 (5th Cir. 2004).  These digits constitute a list of seven, non-exhaustive factors courts consider:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks,
> (3) the similarity of the products or services, (4) the identity of the retail outlets and

---

[4] The likelihood-of-confusion standard "governs [Plaintiff's] claims for trademark infringement and unfair competition."  *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484 (5th Cir. 2004); *KS Cayton, LLC v. Hobby Lobby Stores, Inc.*, No. 6:15-CV-655, 2016 WL 7826650, at *5 (E.D. Tex. Sept. 12, 2016) ("The unfair competition analysis, like the trademark infringement analysis, turns on the likelihood of confusion factors."), *report and recommendation adopted*, No. 6:15-CV-655, 2017 WL 2240288 (E.D. Tex. May 23, 2017).

[5] The Court assumes without deciding that the Key is a legally protectable mark owned by CoreClarity.

purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.[6]

*Viacom Int'l v. IJR Capital Investments*, L.L.C., 891 F.3d 178, 192 (5th Cir. 2018) (citing *House of Vacuums*, 381 F.3d at 192). "The digits are flexible: 'They do not apply mechanically to every case and can serve only as guides, not as an exact calculus.'" *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019) (quoting *House of Vacuums*, 381 F.3d at 485). As such, the Court keeps in mind "two important principles while applying these digits: (1) 'we must consider the application of each digit in light of the specific circumstances of the case'; and (2) 'we must consider the marks in the context that a customer perceives them in the marketplace.'" *House of Vacuums*, 381 F.3d at 485 (quoting *Elvis Presley Enters.*, 141 F.3d at 197)).

CoreClarity contends that the proposed changes to the Domains mark infringes on the Key, given the shape and color scheme of the Domains mark. (Dkt. #21 at p. 4). This change, CoreClarity argues, will likely cause confusion as to the Key. (Dkt. #21 at pp. 4–5). However, both parties acknowledge that Gallup has used a circular design with a quadrant-like quality to depict the Domains since October 2018—nearly two years ago. (Dkt. # 20 at p. 4; Dkt. #21 at pp. 5–6). Because an application for temporary restraining order signals an urgent request for relief and the only recent change to the Domains mark involves the colors of the quarter-circle arcs, the proposed change to the Domains mark that allegedly infringes on the Key must refer to the color scheme. And the evidence of any confusion regarding the color schemes of the Key and the Domains mark is lacking at this stage.

---

[6] The Fifth Circuit sometimes includes an eighth factor—"the degree of care exercised by potential purchasers." *Springboard to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017)). But neither party has addressed this factor, and the Court declines to do so here. *See, e.g.*, *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018) (refraining from addressing this digit because "neither of the parties in the present case . . . ha[d]").

While the Court believes that CoreClarity may eventually be able to present evidence to establish probable confusion caused by Gallup's proposed changes to the Domains mark, as of now, CoreClarity offers conclusory allegations substantiated by little evidence. CoreClarity also did not provide sufficient evidence of a likelihood of confusion at the August 17 hearing. Accordingly, CoreClarity has failed to carry its burden of showing that there is a likelihood of confusion between the Key and the Domains mark at this stage.

Because CoreClarity "has not shown a substantial likelihood of success on the merits, 'the Court need not proceed through the remaining analysis'" to determine whether Plaintiff is entitled to a temporary restraining order. *See Eastwood v. Willow Bend Lake Homeowners Ass'n, Inc.*, No. 4:20-CV-00400, 2020 WL 3412409, at *4 (E.D. Tex. June 22, 2020) (quoting *Grae v. Alamo City Motorplex, LLC*, No. 5:18-CV-664-DAE, 2018 WL 4169311, at *10 (W.D. Tex. July 13, 2018)); *see also Black Fire Fighters Ass'n of Dall. v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990) (denying equitable relief "where the movant . . . failed sufficiently to establish *any one* of the four criteria"). Granting a temporary restraining order should be "the exception rather than the rule," and CoreClarity has not met its burden to warrant such "extraordinary remedy." *Kalsi Eng'g, Inc. v. Davidson*, No. CV H-14-1405, 2014 WL 12540550, at *2 (S.D. Tex. Sept. 2, 2014) (citing *Miss. Power & Light*, 760 F.2d at 621).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff CoreClarity, Inc.'s Application for Temporary Restraining Order (Dkt. #6) is **DENIED** at this time.

**SIGNED this 28th day of August, 2020.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE